UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE JUANNELL KISER,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>Defendant. | Case No.  2:23-cv-00091-JDP (SS)<br><br>**ORDER**<br><br>GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 16 & 18 |

Plaintiff, who suffers from degenerative disc disease of the lumbar and cervical spine, challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), supplemental security income ("SSI"), and disabled widow's benefits under Titles II and XVI of the Social Security Act.  Both parties have moved for summary judgment. ECF Nos. 16 & 18.  Because I find that the ALJ improperly rejected medical opinion evidence, plaintiff's motion is granted, and the Commissioner's cross-motion is denied.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards have been applied.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th

1

Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process, the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

In August 2020, plaintiff filed an application for a period of disability and DIB, and an application for disabled widow's benefits, alleging disability beginning May 1, 2020. In February 2022, she filed an application for SSI, alleging the same disability onset date. Administrative Record ("AR") 354-57, 366-68, 383-92. After her applications were denied both initially and upon reconsideration, plaintiff testified at a telephonic hearing before an Administrative Law Judge ("ALJ"). AR 72-98, 103-34, 137-76. On April 11, 2022, the ALJ issued a decision finding that plaintiff was not disabled. AR 31-50. Specifically, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

3. The prescribed period ends on March 31, 2024.

4. The claimant has not engaged in substantial gainful activity since May 1, 2020, the alleged onset date.

5. The claimant has the following severe impairments: Degenerative disc disease of cervical spine and degenerative disc disease of lumbar spine.

   * * *

6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

   * * *

7. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional balancing, stooping, kneeling, crouching, and climbing ladders, ropes, scaffolds, ramps, or stairs. She can do frequent crawling. Avoid concentrated exposure to extreme cold and vibration and avoid even moderate exposure to dangerous moving machinery and unprotected heights. She can perform work involving simple tasks.

   * * *

8. The claimant is unable to perform any past relevant work.

   * * *

9. The claimant was born [in] 1970 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

10. The claimant has a limited education.

> 11. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 12. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> * * *
>
> 13. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2020, through the date of this decision.

AR 37-45 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, but the request was denied. AR 3-6. She now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Analysis**

Plaintiff argues that remand is warranted because the ALJ did not properly consider the medical opinion evidence addressing mental and physical functional limitations. ECF No. 16-1 at 3-7.

**A.    Legal Standard for Evaluating Medical Opinion Evidence**

In 2017, revised Social Security Administration regulations took effect concerning the evaluation of medical opinions. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ determines which medical opinions are most "persuasive" by focusing on a variety of factors: (1) supportability; (2) consistency; (3) relationship with the claimant—including length of treatment, frequency of examinations, purpose and extent of treatment, and whether the medical source examined the claimant as opposed to reviewing only the documentary medical evidence; (4) the medical source's area of specialty; and (5) "other" factors, such as the impact of any new evidence received after a medical source has provided a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

4

The factors of "supportability" and "consistency" are the "most important" when determining the persuasiveness of medical opinions, and the ALJ must explain how both were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Under the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Under the "consistency" factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is only required to address the remaining factors when "two or more medical opinions . . . about the same issue are equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

**B.   Medical Opinions Concerning Mental Limitations**

The court first considers the ALJ's analysis of medical opinion evidence relating to plaintiff's mental functioning. On July 29, 2021, Dr. Michelina Regazzi, a licensed psychologist, performed a comprehensive mental status evaluation. AR 1487-90. During the exam, plaintiff reported that she had a low attention span and that she was agitated most of the time. When describing her history, plaintiff stated that she was molested as a child, she had four children who were "adopted out," she had been in relationships involving domestic violence, she had a "bad relationship" with her mother, and she abused alcohol and drugs. AR 1487-88. For daily activities, she was able to clean up after herself, visit people, go to the store as needed, and make simple meals for herself. AR 1488. She reported that she was not receiving treatment for her mental health problems. AR 1487.

Dr. Regazzi noted that plaintiff was alert and oriented, but her speech was rapid, and her mood and affect were "irritable." AR 1489. Plaintiff's concentration and memory were "fair"; her insight and judgment were "poor"; her attention and fund of knowledge were "adequate"; and her ability to perform simple calculations was "poor." *Id.* Plaintiff's mental status was normal with respect to intelligence and thought processes. *Id.* Dr. Regazzi stated the following diagnostic

1    impression: amphetamine use disorder and unspecified mood disorder. AR 1490. Concerning

2    functional limitations, Dr. Regazzi opined that plaintiff was moderately impaired in her ability to

3    complete a normal workday or workweek without interruptions resulting from her psychiatric

4    condition, and mildly impaired in the ability to interact with coworkers and the public. *Id.* Dr.

5    Regazzi also opined that plaintiff was incapable of managing funds. *Id.*

6          The ALJ considered Dr. Regazzi's opinion, and found it "somewhat persuasive," but

7    disagreed that plaintiff was moderately impaired in completing a normal workday or workweek.

8    AR 43. The ALJ gave two reasons for discounting the moderate limitation: it was not consistent

9    with plaintiff's treatment, and it was not consistent with the opinions of the non-examining

10   medical consultants. *Id.*

11         To the extent that the ALJ rejected Dr. Regazzi's opinion because it was not consistent

12   with plaintiff's treatment history, the ALJ failed either to identify any specific medical records or

13   findings that conflicted with Dr. Regazzi's restriction, or otherwise to explain how the evidence

14   supported the conclusion that plaintiff was able to maintain a regular work schedule without

15   interruptions from her psychiatric symptoms.

16         In the hearing decision, the ALJ discussed a selection of treatment records from 2019,

17   noting that: (1) on May 28, 2019, plaintiff's mental status examination was normal, *see* AR 40,

18   599-600; (2) on August 15, 2019, plaintiff was agitated but had a normal mood, she complained

19   of uncontrolled depression and anxiety, and she reported that she had stopped taking psychotropic

20   medication but agreed to see her primary care physician for another prescription, *see* AR 37, 814-

21   15; and (3) on September 17, 2019, plaintiff's mood was again normal with matching affect, *see*

22   AR 40, 575-76. The ALJ also reviewed a treatment note from August 3, 2020, that states that

23   plaintiff was homeless, she was tearful and angry, and she had used narcotics for fifteen years.

24   *See* AR 37, 1435. Citing a subsequent treatment note from March 22, 2021, the ALJ observed that

25   plaintiff's affect was normal and that she was fully oriented. *See* AR 41, 1367-68. The ALJ

26   further noted that when plaintiff was evaluated by Dr. Regazzi in July 2021, she reported that she

27   was not taking any psychotropic medication and was not receiving mental health treatment. *See*

28   AR 41, 1487. Finally, the ALJ observed that on January 3, 2022, plaintiff was cooperative and

had a normal mood with matching affect. She reported that she had not used methamphetamine for approximately four months. Although plaintiff complained of memory problems, the examiner opined that her cognitive impairment did not affect her ability to perform activities of daily living. *See* AR 37, 41, 696-97.

The ALJ's synopsis primarily highlighted normal mental status examination findings while ignoring evidence of more pronounced symptoms. For example, although the ALJ pointed out specific instances in August 2019 and July 2021 when plaintiff reported that she was not taking medication, a broader view of the evidence reflects regular, ongoing treatment with prescribed antidepressants and anti-anxiety medications. The court notes that in 2017 and 2018, several years before the alleged disability onset date, plaintiff was prescribed medications for depression and anxiety, including Prozac, Abilify, and Cymbalta. *See* AR 490-91, 832, 857, 859, 904. Subsequent treatment notes from 2019 and early 2020 reflect that plaintiff had an irritated mood at times, had symptoms of depression and anxiety comorbid with PTSD, and that she was prescribed Lexapro. AR 829-30, 1031-32, 1283-86, 1312-13. Other treatment notes from 2020 reflect that plaintiff had an anxiety disorder, panic attacks, depression, and PTSD, and was prescribed Paxil and Ativan. AR 1436-37, 1454-55, 1460-61.

Although, as the ALJ observed, numerous treatment notes include unremarkable mental examination findings, other records—which the ALJ did not discuss—reflect mood abnormalities that indicate more severe symptoms. For example, in June 2020, plaintiff had a depressed mood with matching affect, and she was "weepy" when discussing her "current situation." AR 1454. She also reported "breakthrough anxiety" and panic attacks, and that she had "reached out to mental health" for counseling. *Id.* Several months later, in October 2020, plaintiff was "very agitated" and had a labile mood with matching affect. During that visit, the examiner noted "tears of sadness and frustration" when plaintiff discussed recent events in her life. AR 1428-29.

Treatment records from 2021 and 2022 further chronicle plaintiff's struggle with anxiety and depression. In November 2021, plaintiff complained of anxiety that was difficult to control, panic attacks, and excessive worry, all of which caused significant distress and limited her ability to function. Plaintiff reported, however, that she had not been taking psychotropic medication

and was again prescribed Lexapro. AR 713-14. In January 2022, plaintiff reported increased anxiety, problems with insomnia, and that she had feelings of helplessness and depression. The examiner, noting worsening depression, increased her dose of Lexapro and prescribed an emotional support animal. AR 696-97.

Because the court is unable discern what specific evidence the ALJ relied on to reject Dr. Regazzi's opinion that plaintiff was moderately impaired in her ability to complete a workday or workweek, the court finds that the ALJ failed to meaningfully address the consistency factor. *See* 20 C.F.R. § 404.1520c(c)(2). As such, substantial evidence does not support the ALJ's conclusion that Dr. Regazzi's limitation was inconsistent with plaintiff's treatment history.

Similarly, the ALJ erred in relying on the opinions of the non-examining consultants as a reason to reject Dr. Regazzi's restriction. The record shows that S. Amon, M.D., and A. Gallucci, Psy.D., reviewed the medical evidence at the reconsideration stage. Dr. Amon opined that plaintiff could perform light work with certain postural and environmental limitations. AR 147, 152-53. In turn, Dr. Gallucci opined that there was no evidence of a severe mental impairment and that plaintiff had only mild workplace limitations. AR 148. The ALJ accepted their opinions as persuasive, stating that they were consistent with plaintiff's medical records, diagnostic test results, and the objective clinical findings. AR 43.

The non-examining consultants' report references Dr. Regazzi's opinion that plaintiff is moderately impaired in the ability to complete a workday or workweek without interruption. Nevertheless, the report states, without any explanation, that based on Dr. Regazzi's functional assessment, plaintiff "really is not too limited." AR 146. The report then states Dr. Gallucci's opinion that plaintiff's mental impairments were not severe and resulted in only mild limitations. AR 148. There is neither any supporting explanation for Dr. Gallucci's assessment nor any discussion of plaintiff's capacity to complete a workday or workweek without interruption. Indeed, in opining that plaintiff had only mild impairments, Dr. Gallucci did not even acknowledge that this conflicted with Dr. Regazzi's more restrictive limitation.

On this record, the court finds that the ALJ's determination that Dr. Regazzi's limitation is inconsistent with the opinions of the non-examining consultants is not supported by substantial

evidence. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

Having determined that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Regazzi's limitation, the court declines to address plaintiff's remaining arguments.

### C.   Remand for Further Proceedings

Because the ALJ's rejection of medical opinion evidence was not supported by substantial evidence in the record, the matter must be remanded for further consideration. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted); *Treichler v. Comm'r of Social Sec.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

### Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 16, is granted.

2. The Commissioner's cross-motion for summary judgment, ECF No. 18, is denied.

3. The matter is remanded for further proceedings consistent with this order.

4. The Clerk of Court is directed to enter judgment in plaintiff's favor.

IT IS SO ORDERED.

Dated:   February 22, 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

9